UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

TAPP INFLUENCERS, LLC, THE BLU MARKET INC.
and STEVEN FORKOSH

                    Plaintiffs,

      -against-

ESPIRE ADS, LLC, LISA NAVARRO, NATHANIEL CO,
CHARLES PUNAY and CPA VIRAL LLC, D/B/A TAPMOB

                    Defendants
------------------------------------------------------------------------x

TRIAL BY JURY DEMANDED

Case No.

COMPLAINT

Plaintiffs, by their attorneys, Richard L. Herzfeld, P.C., for their complaint, allege as follows:

PARTIES

1.     Plaintiff, TAPP INFLUENCERS, LLC ("TAPP"), is a limited liability company formed under the laws of the State of New York.

2.     Plaintiff, THE BLU MARKET INC. ("Blu Market") is, and at all times hereinafter mentioned was, a corporation formed under the laws of the State of New York.

3.     Plaintiff, STEVEN FORKOSH ("Forkosh") is, and at all times hereinafter mentioned was, an individual residing within the City and State of New York.

4.     Upon information and belief, defendant ESPIRE ADS, LLC, is,  a limited liability company formed under the laws of the State of Delaware.

5.     Upon information and belief, defendant LISA NAVARRO ("Navarro"), is an individual residing within the State of California.

6.     Upon information and belief, defendant NATHANIEL CO ("Co"), is an individual residing within the State of California.

7.     Upon information and belief, defendant CHARLES PUNAY , is an individual residing within the State of California.

8.     Upon information and belief, defendant CPA VIRAL LLC, , is a limited liability company formed under the laws of the State of California, also doing business as TAPMOB.

BASIS FOR JURISDICTION

9.     This Court has jurisdiction by reason of 28 USC §1332, diversity of citizenship.

10.    Plaintiffs are citizens of the State of New York.

11.    Defendant is a citizen of the State of California and Delaware.

12.    Jurisdiction is also pursuant to 18 U.S.C. §1336(c) for claims under the "Defend Trade Secrets Act" and over Plaintiffs' state claims pursuant to 28 U.S.C. §1367(a).

13.    Venue is properly in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391(b)(2) and (3), as the judicial district in which a substantial part of the events or omissions giving rise to plaintiffs' claims occurred and alternatively, as the judicial district in which defendants are subject to the court's personal jurisdiction.

INTRODUCTION

14.    Social media influencing is the process of increasing public awareness and demand for various products through the social media sites of "affiliates" or "influencers",

2

persons on social media with large followings, to promote the products by bringing them to the attention of their followers, people who follow the influencers on social media such as Instagram, Twitter, etc.

15.     Forkosh has been involved in the business of social media influencing for over 8 years.

16.     He began in 2013 when he formed The Blu Market Inc., a New York corporation which was engaged in social media influencer advertising and apps.

17.     More recently, he formed TAPP to engage in these areas as well as other aspects of the advertising business.

18.     Companies such as Blu Market are intermediaries. They are engaged by an advertiser for a particular product through social media influencing and then  engage "affiliates" or "influencers" to promote the products by bringing them to the attention of their followers.

19.     These influencers are independent contractors, and always are engaged on a non-exclusive basis.

20.     The project is set up using third party companies such as Tune, which provides its proprietary tracking platform to track the project and the influencers in order to calculate compensation. It tracks the project, records which influencer should be credited and provides periodic reports from which invoices can be generated.

21.     Espire was formed by Navarro, while she was employed by Blu Market.

22.     It is engaged in the same business as plaintiffs and is a competitor.

23.     Co and Punay had worked for Blu Market along with Navarro and then worked for Espire.

24.   Co and Punay then formed and operated CPA VIRAL LLC d/b/a Tapmob, also a competitor of plaintiffs.

## DEFENDANTS AS A FAITHLEESS SERVANTS

25.   Navarro began with Blu Market as an employee sometime in 2013 or 2014.

26.   She gradually gained Forkosh's trust and was appointed to the position Chief Operations Officer, which gave her unsupervised access to all of Blu Market's operations.

27.   In accepting her employment, Navarro understood that she would have access to confidential and proprietary information that belonged Blu Market.

28.   She had access to Blu Market's confidential business development plans to attract customers.

29.   She had access to its confidential marketing plans.

30.   She interfaced with its clients and the influencers it employed and had access to confidential information concerning each.

31.   She had sole responsibility to approve invoices and made payments to employees, influencers and vendors, all without oversight.

32.   Plaintiffs' advertiser list and list of affiliates, its marketing and business plans, its customer specific business models and its internal logistical and operational procedures qualify as trade secrets as a formula, pattern, device or compilation of information which is used in Blu Market's business which gives Blu Market the opportunity to obtain an advantage over competitors who do not know or use it.

33.   Plaintiffs take great care and precaution to preserve the exclusivity of its trade secrets and this information is not otherwise known outside of the business.

34.   Plaintiffs only divulge trade secrets of the kind described herein if there is a

4

commitment by the recipient to maintain its confidentiality which Navarro made in this case.

35.    A confidential relationship existed between Navarro and Blu Market.

36.    Navarro capitalized on the information learned by reason of her confidential relationship with Blu Market.

37.    Navarro violated the trust of Blu Market extended by reason of that confidential relationship.

38.    Although Navarro continued with Blu Market until 2017, it turned out that she was a faithless employee for much of her employment in violation of her confidentiality commitment as well as her statutory and common law obligations to Blu Market.

39.    In May, 2015, she secretly founded and began operating Espire, while working for Blu Market (Exhibit 1). She continued into mid-2017, illegally stealing hundreds of thousands of dollars from Blu Market for her startup.

40.    As a trusted executive officer, Navarro acted without any oversight, allowing her free reign to brazenly strip Blu Market of customers, business opportunities, confidential personal information for its customers and influencers, employees and funds.

41.    She subverted other Blu Market employees (Justin Emert, Eric Radke, Nick Dimartino and Alex Vazquez) who joined in her plan and she then used these employees to steal trade secrets including confidential business plans, marketing plans, customer information, influencer information and Tune files with operations information.

42.    These trade secrets included price structures to clients and payment structures to affiliates. It also gave Navarro and Espire the ability to communicate directly with Blu Market's advertisers and influencers and to replicate the systems and infrastructure Blu Market had painstakingly created.

5

43.     She had her cohorts export a list of about 12,000 Blu Market influencer contacts (Exhibit 2).

44.     Navarro stole Blu Market's "pitch deck", the Blu Market business plan developed to attract clients.

45.     Navarro copied Blu Market contracts verbatim.

46.     Navarro used her Blu Market email to create a Linked In account for Espire.

47.     In July, 2017, when Navarro and her "team" decided to prepare for their departure, she and her cohorts reached out to  Blu Market clients to advise them of the coming "transition", although Navarro was still embedded at Blu Market (Exhibit 3).

48.     Espire and Navarro then used the stolen information and funds to engage in a competing social influencer advertising business in violation of Navarro's common law and contractual duties.

49.     She even went so far as to steal funds from Blu Market to finance Espire.

50.     Navarro had unfettered, unsupervised access to Blu Market funds.

51.     Navarro filed copyrights for desktop and mobile apps for Espire (while still at Blu Market)(Exhibit 4) and shortly before filing, Navarro used her unsupervised access to authorize a Paypal disbursement to herself for $5,000 (Exhibit 5), attaching her own note that this was for 1/3 of salary owed.

52.     There was no "salary owed" and upon infomrmation and belief, not only did she steal the source code for the copyright, as well as the business plan, influencer and client information, she stole the money to pay her attorneys to file the copyright or otherwise fund her company.

53.     Navarro would repeatedly evidence her contempt of Forkosh, bragging that

Blu Market was financing the creation of its own competitor, Espire, right under Forkosh's nose.

54.    Navarro repeatedly assured her cohorts that there would be no repercussions from Forkosh against them as she had been accumulating embarrassing videos and photographs of Forkosh which she would publically disclose to his clients, family and friends if he took any action against them.

55.    After stealing whatever she could from Blu Market, one Monday in 2017, Navarro left without notice, taking Justin Emert, Erik Radke, Jon Melendez and Nick Dimartino, who were Blu Market employees. Forkosh came in that Monday to an empty office with no clue as to what had taken place.

56.    When she left, Navarro and Melendez (her boyfriend) not only went into Blu Market offices and stole physical records,  she  actually stole American Express gift cards used in the business, and left a note behind in the envelope which held the cards for Forkosh to find stating, "looking for something?".

57.    After Navarro left, Navarro and her boyfriend acted on Navarro's boasts that there would be no repercussions. They threatened Forkosh that if he ever took any action against Navarro for her faithless actions or challenged Espire's use of Blu Market's information, they would engage in physical violence against his family and Navarro and Melendez would publicly defame him over social media using what she claimed were embarrassing photographs and videos which she had secretly taken just for this purpose.

## NAVARRO'S FIRST ATTEMPT TO EXTORT AN
## OWNERSHIP INTEREST IN FORKOSH'S BUSINESS

58.    Simply stealing Blu Market funds and trade secrets and threatening Forkosh,

however, was not enough.

59.     In July/August, 2017, Navarro made the incredible assertion that she was actually a shareholder of The Blu Market Inc.

60.     In response, counsel for Blu Market rejected her claims, summarized  the thefts Navarro committed while at Blu Market and the actions which would be taken against her should she persist (Exhibit 6).

61.     Navarro's attempted extortion quicky ended.

THE "JOINT VENTURE"

62.     Despite the foregoing, in July, 2020, Navarro and Forkosh engaged in discussions in which Navarro expressed interest in doing business together and agreed to destroy and/or deliver any compromising photos and videos she had.

63.     A proposed agreement was drafted but they could never come to terms.

64.     When negotiations stalled, Navarro presented an abbreviated interim agreement in order to move forward while final details were worked out. Exhibit 7.

65.     The document was forwarded to Forkosh directly, circumventing counsel.

66.     The document asserted that Navarro was the sole owner of Espire.

67.     That representation was untrue.

68.     Espire's operating agreement (Exhibit 8) shows several owners.

69.     As an interim agreement, it provided that the parties "shall" enter into a "50%/50% partnership" for the company. When completed, Forkosh would retain 50% of all three entities as would Navarro.

70.     It also provided for the creation of an operating agreement for the anticipated venture.

71.     None of the foregoing took place and agreement was never effectuated.

72.     No joint venture was created.

73.     No transfer of interests occurred.

74.     No operating agreement was drafted for the proposed joint venture.

75.     Although it provided for the payment of salaries, needless to say no payments were made.

76.     No entity was created and no tax return was filed.

77.     Moreover, based upon the Espire operating agreement, Navarro was not even authorized to commit to the transfer of her interest.

78.     As nothing moved forward, and after learning that Navarro did not even have the authority to enter into an agreement and her representations were fraudulent, the agreement was rescinded (although Navarro represented it was never signed at all) (Exhibit 9).

### THE JOINT EFFORTS OF ESPIRE, NAVARRO AND PUNAY

79.     Punay worked with plaintiffs through 2020.

80.     A confidential relationship existed between Punay and plaintiffs and Punay committed to maintain the confidentiality of plaintiffs' trade secrets.

81.     Punay violated the trust of plaintiffs extended by reason of that confidential relationship.

82.     Punay capitalized on the information learned by reason of the confidential relationship with plaintiffs.

83.     While still working with Blu Market, Punay began work with Espire in December 2018.

84.     In or about June, 2021, Forkosh learned that Espire, Navarro and Punay had begun a campaign using plaintiffs' trade secrets and intellectual property and defaming plaintiffs with current and prospective advertiser clients and influencers.

85.     They directed fake traffic (VDOS) to the influencer links that would cause their sites to crash which they then used to try to convince the influencers to switch from plaintiffs to Espire.

86.     Then, they embarked on a campaign which asserted the exact opposite. Although they had engaged in misfeasance against plaintiffs, they advised current and prospective advertising clients and influencers that plaintiffs were scam artists and stole intellectual property.

87.     These assertions were false, defamatory, malicious, and libelous.

88.     Defendants were motivated by actual malice in that they knew that the allegations concerning plaintiffs were false and untrue.

89.     Defendants' intentional acts were committed for the sole, malicious purpose of inflicting economic damages against plaintiffs.

90.     As a result of the publications and the acts of defendants in connection therewith, plaintiffs have been held up to public contempt, ridicule, disgrace, and prejudice, have been irreparably injured in their good names, business reputation, and social standing, have lost the esteem and respect of their friends, acquaintances, business associates, and of the public generally and have lost present and future business.

91.     A cease and desist email was forwarded to Navarro and others (Exhibit 10).

## NAVARRO'S SECOND ATTEMPT TO STEAL AN INTEREST IN
## FORKOSH'S BUSINESS-THE UNSERVED COMPLAINT

92.     Instead of stopping the misconduct, Navarro continued her defamatory campaign and again accused plaintiffs of the bad acts which she had committed in an action filed by Navarro and Espire in this Court, Espire Ads, LLC et al v. TAPP Influencers LLC et al, 1:21-cv-10623 (Hon. John G. Koetl) (Exhibit 11).

93.     Despite the admission that there was no signed agreement and the agreement rescinding whatever there might have been, Navarro also asserts a number of claims based on the non-existent joint venture agreement.

94.     The complaint was filed on December 14th at which time the court docket shows that plaintiffs' counsel was advised of the need to file a civil information cover sheet.

95.     However, nothing further has taken place. The civil information cover sheet, Rule 7.1 Statement and summons have not been filed and the complaint has not been served.

96.     As such, plaintiffs, who are named as defendants therein, have not had the opportunity to defend themselves, counterclaim and/or seek dismissal and sanctions.

97.     The reason for that failure is now clear.

98.     Defendants' goal was not to adjudicate their alleged claims, it was a continuation of defendants' schemes to defame defendants and undermine their business relationships, without going through the trouble of proving anything.

99.     To that end, defendants Navarro and defendant Co individually and through their companies, Espire and CPA Viral LLC, D/B/A TAPCO, have forwarded texts to influencers and advertisers with whom Blu Market had business relations and to the

influencing community in general stating,

> that TAPP will be facing 25+ Federal charges as if this were a criminal complaint;

> that simply by virtue of the complaint, TAPP cannot be trusted; and .

> that when TAPP is put out of business by this suit "you know where to go". Exhibit

12 hereto.

100.    These texts are false and misleading..

101.    This is malicious, unfair and anti-competitive activity that violates New

York law.

### CO'S PRIOR CONTRACT WITH FORKOSH

102.    Moreover, by virtue of these communications, Co has also violated a prior

contract with Forkosh and Blu Market (Exhibit 13).

103.    Previously, in 2014/2015, Co had been involved in his own effort to steal Blu

Market information. Faced with the threat of litigation, Co agreed to sever his relationship

with Blu Market and further agreed not to contact any influencers or advertisers with which

Blu Market did business during the course of the agreement.

104.    As such, not only has Co defamed defendants with his false texts, he has

also violated his obligations under that agreement.

### FIRST CAUSE OF ACTION

### FAITHLESS EMPLOYEE

105.    Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 104 as if fully set forth herein.

106.    Navarro's acts described above constitute acts of a faithless employee.

107.    By reason of the foregoing, Navarro is liable to Blu Market for all

compensation paid to her in an amount in excess of $500,000, the full amount to be determined at trial.

SECOND CAUSE OF ACTION

THEFT OF THE TRADE SECRETS, PROPRIETARY
INFORMATION AND FUNDS OF PLAINTIFFS

108.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 107 as if fully set forth herein.

109.   The conversion of Blu Market trade secrets, proprietary information and funds by Navarro, Punay and Espire have damaged plaintiffs in the loss of funds, income, customers, influencers and business opportunities.

110.   Plaintiffs' proprietary and confidential information as previously described is information not generally known to the public and  constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).

111.   Plaintiffs' trade secrets are used or intended for use in interstate and/or foreign commerce.

112.   Plaintiffs seek to protect the confidentiality of its trade secrets by securing confidentiality commitments from those with access to the information.

113. Navarro, Punay and Espire are utilizing plaintiffs' trade secrets in order to compete with plaintiffs.

114. As a result of the misappropriation of Plaintiffs' trade secrets by Navarro, Punay and Espire, plaintiffs have lost their competitive advantage as well as the loss of existing and prospective clients.

115. Due to the loss of the foregoing, plaintiffs have suffered significant monetary

damages.

116.    By reason of the misappropriation of plaintiffs' trade secrets by Navarro, Punay and Espire, plaintiffs have been damaged in the loss of revenues and good will from 2016 through 2020, an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00)and seek punitive damages in an amount to be determined at trial.

THIRD CAUSE OF ACTION

WRONGFUL INTERFERENCE WITH THE CONTRACTUAL RELATIONS AND PROSPECTIVE CONTRACTUAL RELATIONS OF PLAINTIFFS BY DEFENDANTS

117.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 116 as if fully set forth herein.

118.    Plaintiffs have or had contractual relations with many of the advertisers and influencers which defendants have sought to divert and others were prospective customers for plaintiffs' services.

119.    Plaintiffs have or had contractual relations with many of the advertisers and influencers which defendants contacted in communicating the false and misleading communications about plaintiffs and others are prospective customers for plaintiffs' services.

120.    Defendants' conduct constitutes tortious interference with contract and prospective business relations, based upon defendants' intentional acts committed for the sole, malicious purpose of interfering with plaintiffs' relations with existing customers and potential customers in the social influencing  community.

121.    Plaintiffs have suffered and will suffer loss of present and future business and

14

loss of credit and reputation, all to their damage.

122.    By reason of the foregoing plaintiffs have been damaged in the loss of revenues and good will from 2016 through 2020 in an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and seek punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT OF ESPIRE AND NAVARRO

123.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

124.    As a result of the unlawful misappropriation of trade secrets and funds by Espire and Navarro, and unjust enrichment as alleged above, Espire and Navarro, without authorization and without just compensation to plaintiffs, and have been unjustly enriched, and are in possession of money which in good conscience and justice belongs to plaintiffs.

125.    As a direct and proximate result of defendants' acts of misappropriation and unjust enrichment, plaintiffs have suffered damages in the form of profits defendants have earned from the foregoing misconduct which profits should be disgorged to plaintiffs.

126.    By reason of the foregoing plaintiffs have been damaged in the loss of revenues and good will from 2016 through 2020, an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and seek punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## BREACH OF CONTRACT BY CO

127.    Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 126 as if fully set forth herein.

128.    Pursuant to the contract entered into between Co, Forkosh and Blu Market, Co agreed not to contact any influencer or advertiser engaged by Blu Market during the course of their relationship.

129.    In forwarding texts to advertisers relating to the Espire litigation, Co breached the agreement.

130.    By reason of the foregoing, Forkosh and Blu Market have been damaged by Co in an amount to be determined at trial.

SIXTH CAUSE OF ACTION

PRIMA FACIE TORT BY ALL DEFENDANTS

131.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 130 as if fully set forth herein.

132.    Defendants' conduct constitutes a prima facie tort against plaintiffs, based upon the intentional acts committed for the sole, malicious purpose of inflicting economic damages against plaintiffs without proper, legal justification, cause or authority, as a result of which plaintiffs have suffered damage to their reputations and their relations in the social influencing community.

133.    Plaintiffs has suffered and will suffer loss of present and future business and loss of credit and reputation, all to plaintiffs' damage.

134.    By reason of the foregoing plaintiffs have been damaged in the loss of revenues and good will from 2016 through 2020, an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and seek punitive damages in an amount to be determined at trial.

16

SEVENTH CAUSE OF ACTION

DEFAMATION AGAINST ALL DEFENDANTS

135.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 134 as if fully set forth herein.

136.  The primary business of plaintiffs is providing social influencing campaigns for advertisers and employing influencers to do so.

137.  Even if there is no immediate relationship between a plaintiff and a particular influencer or advertiser, the community is closely connected and a defamatory text or communication to even a limited number of influencers and advertisers will spread exponentially.

138.  As part of their scheme, Navarro and Espire pretended to engage in discussions for a joint venture, in order to use those discussions to then allege false and defamatory claims against plaintiffs in their complaint.

139.  Defendants began the campaign to defame plaintiffs with their assertions to advertisers and influencers that plaintiffs were scam artists and stole intellectual property although defendants were actually the guilty parties.

140.  These allegations are untrue, false, and defamatory.

141.  Ignoring the demand to cease and desist, defendants doubled down on the defamation by filing the unserved complaint in this Court.

142.  It is apparent that the purpose of filing the complaint was to further the vindictive campaign of defendants against plaintiffs.

143.  The allegations of the complaint are untrue, false, and defamatory.

144.  No privilege is available to defendants as the purpose of the complaint was

17

to wrongfully publish these false accusations to the social influencing community, many of whom are customers of plaintiffs.

145.    The allegations of the text to the community are untrue, false, and defamatory.

146.    Plaintiffs only learned of the text allegations from an influencer to whom the text had been sent.

147.    Defendants caused the text and reference to the lawsuit to be distributed to the social influencing community.

148.    The complaint itself is publically available to anyone who wishes to look.

149.    Defendants were motivated by actual malice in that they knew that the allegations concerning plaintiffs were false and untrue.

150.    Defendants' intentional acts were committed for the sole, malicious purpose of inflicting economic damages against plaintiffs.

151.    The matters published were libel per se.

152.    These accusations were published solely for the purpose of harming plaintiffs' reputation and business relations.

153.    As a result of the publications and the acts of defendants in connection therewith, plaintiffs have been held up to public contempt, ridicule, disgrace, and prejudice, have been irreparably injured in their good names, business reputation, and social standing, have lost the esteem and respect of their friends, acquaintances, business associates, and of the public generally and have lost present and future business.

154.    By reason of the foregoing plaintiffs seek compensatory and punitive damages in an amount to be determined at trial.

18

EIGHTH CAUSE OF ACTION

PERMANENT INJUNCTION

155.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 154 as if fully set forth herein.

156.   Plaintiffs, by reason of defendants' misconduct, have suffered and will continue to suffer irreparable injury  to their business and reputation for which damages are an inadequate remedy.

157.   Plaintiffs have no adequate remedy at law for the damages to their business and reputation inflicted by defendants.

158.   By reason of the foregoing, defendants, their agents, employees, officers, directors and members should be permanently enjoined from using plaintiffs' trade secrets, all such information should be delivered to plaintiffs, Navarro and her agents should be compelled to deliver up to Forkosh any photographs, videos or other materials she has in her possession regarding Steven Forkosh and defendants, their agents, employees, officers, directors and members should be permanently enjoined from and from issuing further communications regarding plaintiffs and any litigation with respect to plaintiffs to influencers, advertisers or others involved in social media influencing.

WHEREFORE, plaintiffs demand judgment as follows:

On the First Cause of Action, an award against Navarro in favor of Blu Market of no less than $500,000, the full amount to be determined at trial,

On the Second Cause of Action, an award against defendants Navarro, Punay and Espire in favor of plaintiffs for the loss of revenues and good will from 2016 through 2020,

in an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and punitive damages in an amount to be determined at trial.

On the Third Cause of Action, an award against defendants in favor of plaintiffs for the loss of revenues and good will from 2016 through 2020, in an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and punitive damages in an amount to be determined at trial.

On the Fourth Cause of Action, an award against defendants Espire and Navarro in favor of plaintiffs for the loss of revenues and good will from 2016 through 2020, in an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and punitive damages in an amount to be determined at trial.

On the Fifth Cause of Action, an award against defendant Co in favor of plaintiffs Blu Market and Forkosh in an amount to be determined at trial;

On the Sixth Cause of Action, an award against defendants in favor of plaintiffs for the loss of revenues and good will from 2016 through 2020, in an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and punitive damages in an amount to be determined at trial.

On the Seventh Cause of Action, an award against defendants in favor of plaintiffs for the loss of revenues and good will from 2016 through 2020, in an amount to be determined at trial but in no event less than fifty million dollars ($50,000,000.00) and punitive damages in an amount to be determined at trial.

On the Eighth Cause of Action, that defendants, their agents, employees, officers, directors and members be permanently enjoined from using plaintiffs' trade secrets; that all such information should be delivered to plaintiffs; that Navarro and her agents should

be compelled to deliver up to Forkosh any photographs, videos or other materials she has in her possession regarding Steven Forkosh; and that defendants, their agents, employees, officers, directors and members should be permanently enjoined from and from issuing further communications regarding plaintiffs and any litigation with respect to plaintiffs to influencers, advertisers or others involved in social media influencing;

Together with interest, costs, attorneys fees and such other and further relief as the court deems proper.

Dated:  New York, New York          RICHARD L. HERZFELD, P.C.
        December 27, 2021

                                    _____
                                    By: RICHARD L. HERZFELD
                                    Attorneys for Plaintiffs
                                    112 Madison Avenue
                                    8th Floor
                                    NY NY 10016
                                    212-818-9019
                                    Rherzfeld@herzfeldlaw.com
                                    NY Bar no.1130004